## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

XL SPECIALTY INSURANCE COMPANY,  )
a Delaware corporation,                              )
                                                                  )
       Plaintiff,                                           )
                                                                  )
       v.                                                       )
                                                                  )
PAUL J.KING, JR., an Illinois citizen,            )
SANDRA DIXON JILES, an Illinois citizen, and )
SHAM DABADGHAO, an Illinois citizen,       )
                                                                  )
       Defendants.                                       )

```
FILED: APRIL 25, 2008
No. 08CV2377    RCC
JUDGE HIBBLER
MAGISTRATE JUDGE VALDEZ
```

### COMPLAINT FOR BREACH OF INDEMNITY CONTRACT

XL Specialty Insurance Company ("XL"), by counsel, for its complaint against the

defendants Paul J. King, Jr., Sandra Dixon Jiles, and Sham Dabadghao (hereinafter collectively

referred to as the "Indemnitors"), alleges and states:

### PARTIES

1.     XL is a corporation organized under the laws of the State of Delaware, with its

principal place of business in the State of Connecticut, licensed to transact surety business in the

State of Illinois.

2.     Defendant Paul J. King is a citizen of the State of Illinois, residing at 9112 South

Constance Avenue, Chicago, Illinois, 60606.

3.     Defendant Sandra Dixon Jiles is a citizen of the State of Illinois, residing at 175

E. Delaware Street, #5401, Chicago, Illinois 60611.

4.     Defendant Sham Dabadghao is a citizen of the State of Illinois, residing at 4848

N. Central Avenue, Chicago, Illinois 60630.

5.     UBM, Inc is a principal obligor and contract indemnitor but is not named as a defendant because it is a debtor in bankruptcy in the Northern District of Illinois, Eastern Division, Case Number 06-17219.

## JURISDICTION AND VENUE

6.     This court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1), Diversity Jurisdiction, in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different states.

7.     Venue is proper in this Court under 28 U.S.C. §1391(a) because all Defendants reside in this District and the construction project which gave rise to these indemnity obligations is located in this District.

## BREACH OF INDEMNITY AGREEMENT

8.     On or about November 19, 2003, UBM entered into a contract with the County of Cook, State of Illinois ("Cook County") as owner, Contract No. 03-53-868 ("the Contract), for the construction of the project commonly known as the Hektoen Building Renovation Phase 2A, located at 627/637 South Wood Street in Chicago, Illinois (the "Project").

9.     UBM was required to obtain and did obtain from XL a surety bond, bond no. 54-143026, (hereinafter the "Bond"), that guaranteed UBM's performance obligations under the Contract and guaranteed UBM's payment obligations to its subcontractors, material suppliers and laborers under the Contract, subject to the terms of the Bond, the Contract and the law. A true and accurate copy of the Bond is attached hereto as **Exhibit A** and incorporated by reference herein.

10.     In consideration for XL's issuance of the Bond, UBM and the Indemnitors executed an Agreement of Indemnity (hereinafter "Indemnity Agreement") in which UBM and

2

the Indemnitors agreed to indemnify and hold harmless XL from and against all losses, costs and

expenses as a result of the issuance of the Bond. Specifically, the Indemnity Agreement states,

among other things:

> **V. INDEMNITY, (A) UNDERSIGNED** shall exonerate, hold harmless, indemnify, and keep indemnified **SURETY** from and against any and all losses, claims, liabilities, damages, demands for payment or performance, expenses and costs of whatsoever kind or nature including, but not limited to, interest, court costs, document reproduction and storage charges, investigative expenses and costs, adjusting, expert and attorney fees imposed upon, sustained or incurred by **SURETY** by reason of: (1) **SURETY** having executed, provided or procured **BOND(S)** in behalf of **PRINCIPAL**; (2) **UNDERSIGNED'S** failure to perform or comply with any of the provisions of this **AGREEMENT**; (3) **SURETY** enforcing any of the covenants or conditions of this **AGREEMENT**; (4) **SURETY** conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any **BOND(S)**; and/or (5) **SURETY** prosecuting or defending any action or claim in connection with any **BOND(S)** executed provided or procured in behalf of **PRINCIPAL**, whether SURETY at its sole option elects to employ its own counsel, or permits or requires **UNDERSIGNED** to make arrangements for **SURETY'S** legal representation.

A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit B** and is

incorporated by reference herein.

    11.    Section VI, SETTLEMENTS AND PAYMENTS provides deference to XL in the

payment of claims against the Bond and in proof of the Indemnitors' indemnity obligation as

follows:

> (A)    Surety shall have the right **in its sole discretion** to determine whether any claims, demands suits or judgments on or against the BOND(S) provided, procured or executed by SURETY shall be paid, compromised, defended, prosecuted or appealed.....

> (B)    The liability of UNDERSIGNED under this AGREEMENT shall extend to and include **all amounts paid by SURETY in GOOD FAITH** under the belief that: (1) SURETY is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; or (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability or alleged liability............

(D)    The voucher(s) or other evidence of such payment or an itemized statement of payment(s) sworn to by an officer of SURETY shall be **prima facie evidence of the fact and the extent of the liability** of UNDERSIGNED to SURETY.

(Emphasis supplied.)

12.    Before completion of the Project, Cook County declared UBM in default and terminated UBM from its obligations under the Contract.

13.    Cook County has demanded that XL fulfill its performance obligations under the Bond.

14.    UBM and the Indemnitors have failed and refused to fulfill their obligations to XL under the Indemnity Agreement and are in breach of the Indemnity Agreement.

15.    Numerous UBM subcontractors on the Project made payment bond and lien claims and filed suit to prosecute those claims. On or about October 3, 2005, American Building Services, LLC filed a complaint against UBM, Cook County and XL in the Circuit Court of Cook County, Illinois, entitled "*American Building Services, LLC, An Illinois Limited Liability Company, and the County of Cook for the use and benefit of American Building Services, LLC, plaintiff, v. UBM, Inc., County of Cook, XL Specialty Insurance Company, defendants*, No. 05 CH 13536, into which have been consolidated the various subcontractor suits against UBM, Cook County and /or XL of Johnson Controls, Inc., No. 06 CH 575, Cable Communications, Inc., No. 05 CH 16394,  Edwards Engineering, Inc., counterclaim in 05 CH16394, Focus Environmental Contractors, LLC, as intervener in No. 05 CH 16394, Warren F. Thomas Plumbing Company, 05 CH 21644, and Rupp Industries, Inc., No. 05 CH 3601 (collectively the "Lawsuit").

4

16.    XL has investigated, settled and paid all Bond and lien claims reflected in the

Lawsuit.  UBM appeared by counsel in these suits and urged XL to settle and pay the Bond and

lien claims as UBM was unable to do so.

17.    XL performed the Contract except to the extent Cook County and XL disagreed

about the scope of UBM's work under the Contract, about Cook County's entitlement to

liquidated damages under the Contract, and in other respects about the particulars of XL's

performance obligation under the Bond.  By right of assignment and subrogation, XL has made

demand on Cook County for the balance of Project funds and Cook County has asserted a right

of setoff for damages as a result of UBM's breach.

18.    On or about August 17, 2007, XL and Cook County entered into a settlement

agreement for the resolution of all issues between them arising from the Bond for the Project;

this settlement agreement was amended on or about December 19, 2007 and approved by order

of the Circuit Court of Cook County dated January 9, 2008, a true copy of which order is

attached hereto as **Exhibit C** and incorporated by reference herein.

19.    XL has incurred losses on the Bond in the amount of $769,019.52 and expenses in

the investigation, defense and resolution of Bond claims and in enforcement of the Indemnity

Agreement in the amount of $202,063.55, for a total loss to date of $971,083.07.  XL's

accounting of this loss, a business record kept in the ordinary course of business by XL and

relied on by XL for business purposes, is attached hereto as **Exhibit D** and incorporated by

reference herein.  XL continues the performance of the Contract pursuant to the Bond and the

settlement agreement with Cook County and, therefore, XL's loss continues to accrue.  XL will

continue to accrue attorneys' fees in the enforcement of the Indemnity Agreement and

prosecution of this complaint.  When the Project is complete and accepted by Cook County, the

5

remaining Project funds in the amount of $173,767.22 are to be paid to XL pursuant to the settlement agreement with Cook County as a partial offset of XL's loss and expenses.

20.    The Indemnitors, jointly and severally, are obligated under the Indemnity Agreement to (a) indemnify XL against all losses, costs and expenses in connection with the Bond and in enforcing the terms of the Indemnity Agreement.

21.    Despite XL's demand, the Indemnitors have breached the Indemnity Agreement by failing and refusing to indemnify and hold XL harmless from and against Bond claims, losses and expenses, including attorneys' fees, consultants' fees, costs and other expenses.

22.    XL has been damaged by the Indemnitors' material breach of the Indemnity Agreement in an amount of $971,083.07 and XL's losses and expenses continue to accrue.

WHEREFORE, XL Specialty Insurance Company requests an order of judgment against Paul J. King, Jr., Sandra Dixon Jiles, and Sham Dabadghao, jointly and severally, in the amount of $971, 083.07, plus such additional amounts as are proven at trial, plus costs and such further relief as the Court deems equitable and just.

Dated:  April 25, 2008

**XL SPECIALTY INSURANCE COMPANY**

By:    /s/ Joel R. Page, Jr.
          One of its Attorneys


T. Scott Leo, ARDC No. 03127352
Joel R. Page, Jr., ARDC No. 6205463
Leo & Weber, P.C.
One North LaSalle Street, Suite 3600
Chicago, Illinois 60602
(312) 857-0910

P  No. SB0087401

# PERFORMANCE AND PAYMENT BOND TO THE COUNTY OF COOK

Know All Men By These Presents, That we, UBM, Inc.

as principal, and

XL Specialty Insurance Company

, as surety, are

held and firmly bound unto The County of Cook in the penal sum of Three Million One Hundred Eighty Eight Thousand and 00/100 _____ Dollars ($ 3,188,000.00 ), lawful money of the United States of America, for the payment of which sum of money well and truly to be made, we bind ourselves, our respective heirs, executors, administrators, successors and assigns, firmly, by these presents.

Signed, sealed, and delivered this 1st day of December , A. D. 19 2003

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That whereas the above bounden principal entered into a certain contract with The County of Cook, bearing date the 19th day of November A.D. 19 2003 for Contract #03-53-868, Hoktoen Building Renovation Phase 2A.

The terms and conditions of the Illinois Public Construction Bond Act, 30 ILCS : 50 et seq. are hereby incorporated by reference.

It is hereby expressly understood and agreed, and made a condition hereof, that any judgement rendered in favor of any person not a party to said contract against The County of Cook in any suit arising out of said contract or its performance, when reasonable notice of the pendency of such suit shall have been given to said principal and to said surety, shall be conclusive against said principal and said surety as to both liability and amount.

In Witness Whereof, said parties hereto have caused this bond to be executed and delivered at Chicago, Illinois, all on the day and year first above written.

UBM, Inc.

_____
PRINCIPAL/CONTRACTOR                                    SEAL

By_____          _____
     PRESIDENT                                             SECRETARY

XL Specialty Insurance Company
_____
SURETY                                                   SEAL

By_____          00779              37885
     SURETY/ATTORNEY-IN-FACT                 AMB#              NAIC#
     (ATTACH POWER OF ATTORNEY)
     Steve Cade

Approved as to form:

By:_____
     ASSISTANT STATES ATTORNEY

08CV2377 RCC
JUDGE HIBBLER
MAGISTRATE JUDGE VALDEZ



EXHIBIT
A

# AGREEMENT OF INDEMNITY

This *AGREEMENT* is made and entered into this 15th day of December 2003 by:

**Name (Social Security or Tax ID Number)**

UBM Inc. (36-2824655)

Sandra Dixon Jiles (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)

Paul J. King Jr. (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)

Sham Dabadghao (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)

in favor of XL Specialty Insurance Company, XL Reinsurance America Inc., Greenwich Insurance Company, and their affiliated, associated and subsidiary companies, their successors and assigns (hereinafter referred to as *SURETY*).

## RECITALS

Whereas, *PRINCIPAL*, in the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire or be required to give or procure certain *BOND(S)*; and

Whereas, *UNDERSIGNED*, whether or not named as a *PRINCIPAL* in *BOND(S)* represent and warrant that *UNDERSIGNED* have a substantial, material and/or beneficial interest in the performance and fulfillment of obligations secured or to be secured by *BOND(S)* in behalf of *PRINCIPAL*; and

Whereas, *UNDERSIGNED* understand that *SURETY* has executed, provided or procured *BOND(S)* in behalf of *PRINCIPAL* or will consider requests for *SURETY* to execute, provide or procure *BOND(S)* in behalf of *PRINCIPAL* upon the express understanding that this *AGREEMENT* be entered into by *UNDERSIGNED*; and

NOW THEREFORE, in consideration of *SURETY*: (1) heretofore having executed, provided or procured *BOND(S)* in behalf of *PRINCIPAL*; (2) receiving requests for *BOND(S)* from *UNDERSIGNED* and determining whether or not *SURETY* will execute, provide or procure the *BOND(S)* requested; or (3) hereafter executing, providing or procuring *BOND(S)* in behalf of *PRINCIPAL*; *UNDERSIGNED* covenant and agree as follows:

## I
## DEFINITIONS

The following terms, as used in this *AGREEMENT*, are defined as set forth below:

*BOND*: (1) Contract of suretyship, guaranty or indemnity executed in behalf of *PRINCIPAL* by *SURETY*; (2) the continuation, extension, alteration, renewal or substitution of such contract; (3) a letter, consent or *AGREEMENT* from *SURETY* to a *PERSON* wherein *SURETY* represents to such *PERSON(S)* that *SURETY* may or will execute in behalf of *PRINCIPAL* the *BOND(S)* required by such *PERSON'S* invitation for bids or proposals (hereinafter referred to as *BID LETTER*).

*PERSON*: Individual(s), partnership(s), association(s), limited liability company(s), corporation(s), joint-venture(s), public entity(s), political subdivision(s) or any other legal or commercial entity;

*UNDERSIGNED*: *PERSON(S)* who execute this *AGREEMENT*;

*PRINCIPAL*: One or more *UNDERSIGNED* or any existing or future partnership, joint venture (whether silent or disclosed), association, limited liability company, corporation or other legal or commercial entity in which *UNDERSIGNED* have or will have a substantial, material and/or beneficial interest, including subsidiary, associated and affiliated companies who alone or with other *PERSON(S)* have secured or may secure the performance and fulfillment of obligations by *BOND(S)*, executed, provided or procured by *SURETY*.

*GOOD FAITH*: Honest motives whether or not such motives are the product of bad judgment or negligence.

*EVENT OF DEFAULT*: (1) Any breach of or failure to perform or comply with any of the provisions of this *AGREEMENT*; (2) any alleged or actual breach, or default of any obligation secured by *BOND(S)* whether admitted or contested, declared or undeclared; (3) any failure, delay, refusal or inability of *UNDERSIGNED* to pay claims, bills or other indebtedness secured by *BOND(S)* executed by *SURETY*; (4) any change or threat of change in the character, identity, control, beneficial ownership or existence of *PRINCIPAL*; (5) any assignment by *PRINCIPAL* for the benefit of creditors; (6) the appointment of a receiver or trustee or an application for appointment of a receiver or trustee for *PRINCIPAL* whether insolvent or not; (7) any proceeding on the exercise of any rights by any *PERSON* which deprives or impairs *PRINCIPAL(S)*, use of its plant, machinery, equipment, plans, drawings, tools, supplies or materials; (8) upon the happening of any event other than those specified in (1) through (7) whether or not different from those events which, in *SURETY'S* sole opinion, may expose *SURETY* to loss, cost or expense.

## II
## GENERAL

(A) The aforementioned *RECITALS* are true and correct.

(B) This *AGREEMENT* binds *UNDERSIGNED* and the heirs, personal representatives, successors and assigns thereof, jointly and severally, to *SURETY* in connection with all *BOND(S)* heretofore or hereafter executed, provided or procured by *SURETY* in behalf of *PRINCIPAL* in any penal sum and in favor of any obligee(s).

(C) This *AGREEMENT* shall not be construed as an offer by *UNDERSIGNED* to indemnify *SURETY* which *SURETY* must accept prior to its executing, providing or procuring *BOND(S)* in behalf of *PRINCIPAL*; but, shall be construed as part of the consideration on which *SURETY* has relied or will rely in executing, providing or procuring *BOND(S)* in behalf of *PRINCIPAL*.

(D) This *AGREEMENT* inures to the benefit of any co-surety or reinsurer of *SURETY* on *BOND(S)*, and in the event the *SURETY* procures the execution of *BOND(S)* by other sureties, this *AGREEMENT* shall inure to the benefit of such other sureties.

(E) This *AGREEMENT* shall be liberally construed so as to protect, exonerate, hold harmless and indemnify *SURETY*.

## III
## DECLINE EXECUTION

(A) *UNDERSIGNED* are not obligated to request *SURETY* to execute, provide or procure any *BOND(S)* required of *UNDERSIGNED* in the performance and fulfillment of obligations.

(B) *SURETY* has the right to decline to execute, provide or procure *BOND(S)* requested by *PRINCIPAL*.

(C) If *SURETY* executes, provides or procures a bid or proposal *BOND* or furnishes a *BID LETTER* in behalf of *PRINCIPAL*, *SURETY* has the right to decline to execute the final *BOND(S)*, including, but not limited to, performance, payment, maintenance, or other *BOND(S)* that may be required in connection with any award that may be made under the bid, proposal or tender for which the bid or proposal *BOND* or *BID LETTER* is given.

(D) While *SURETY* may from time to time establish a formal or informal line of credit, *BOND* line or *BOND* program, the existence of such line or program shall be for the sole convenience of *SURETY* and shall not abridge, waive or in any way alter *SURETY'S* absolute right to decline to execute, provide or procure any *BOND(S)* requested by *PRINCIPAL*.

EXHIBIT

B

11/13/2003

(E)   No claim shall be made, nor any cause of[...] assert against *SURETY* by *UNDERSIGNED*[...]ence[...] failure or refusal to execute any
*BOND.*

Case 1:08-cv-02377   Document 1-3   Filed 04/26/2008   Page 2 of 8

## IV
## PREMIUMS

*UNDERSIGNED* shall pay or cause to be paid to *SURETY*, in such manner and at such time as required by *SURETY*, all premiums and charges of *SURETY* in accordance with its rate filings, its manual of rates then in effect or as otherwise charged by *SURETY*, for executing, providing or procuring *BOND(S)* for *PRINCIPAL*.

## V
## INDEMNITY

(A)   *UNDERSIGNED* shall exonerate, hold harmless, indemnify, and keep indemnified *SURETY* from and against any and all losses, claims, liabilities, damages, demands for payment or performance, expenses and costs of whatsoever kind or nature including, but not limited to, interest, court costs, document reproduction and storage charges, investigative expenses and costs, adjusting, expert and attorney fees imposed upon, sustained or incurred by *SURETY* by reason of: (1) *SURETY* having executed, provided or procured *BOND(S)* in behalf of *PRINCIPAL*; (2) *UNDERSIGNED'S* failure to perform or comply with any of the provisions of this *AGREEMENT*; (3) *SURETY* enforcing any of the covenants or conditions of this *AGREEMENT*; (4) *SURETY* conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any *BOND(S)* executed provided or procured in behalf of *PRINCIPAL*; (5) *SURETY* prosecuting or defending any action or claim in connection with any *BOND(S)* executed provided or procured in behalf of *PRINCIPAL*, whether *SURETY* at its sole option elects to employ its own counsel, or permits or requires *UNDERSIGNED* to make arrangements for *SURETY'S* legal representation.

(B)   In order to exonerate, hold harmless and indemnify *SURETY*, *UNDERSIGNED* shall upon demand of *SURETY* deposit funds with *SURETY* before *SURETY* makes any payment; such funds shall be, at the *SURETY'S* option, money or property or liens on or security interests in property. The amount of such money or property or the value of the property to become subject to liens or security interests shall, at the option of the *SURETY*, equal (1) the sum of all pending claims asserted against *SURETY* on *BOND(S)*, whether such claims are contested or not or whether or not liability has been established with respect to such claims, plus the amount of costs and expenses which the *SURETY*, in its sole discretion, estimates may be incurred as a result of the assertion of such claims, or (2) the reserve established by *SURETY* as consequence of having issued *BOND(S)* in behalf of *PRINCIPAL*. *SURETY* shall have no obligation to invest or provide a return on the funds deposited. *UNDERSIGNED* acknowledge that failure of *UNDERSIGNED* to deposit funds with *SURETY* in accordance with this section in the amounts and at the time demanded by *SURETY* shall cause irreparable harm for which *SURETY* has no adequate remedy at law. *UNDERSIGNED* agree that *SURETY* shall be entitled to injunctive relief for specific performance of *UNDERSIGNED'S* obligation to deposit funds with *SURETY* in accordance with this section.

## VI
## SETTLEMENTS AND PAYMENTS

(A)   *SURETY* shall have the right in its sole discretion to determine whether any claims, demands, suits or judgments on or against *BOND(S)* provided, procured or executed by *SURETY* shall be paid, compromised, defended, prosecuted or appealed irrespective of the fact that *UNDERSIGNED* may have assumed, or offered to assume, the defense of the *SURETY* upon such claim, demand, suit or judgment.

(B)   The liability of *UNDERSIGNED* under this *AGREEMENT* shall extend to and include all amounts paid by *SURETY* in *GOOD FAITH* under the belief that: (1) *SURETY* is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; or (2) such payments were necessary or advisable to protect any of *SURETY'S* rights or to avoid or lessen *SURETY'S* liability or alleged liability.

(C)   The liability of *UNDERSIGNED* to *SURETY* shall include interest from the date of *SURETY'S* payments at the maximum rate permitted in the jurisdiction in which this *AGREEMENT* is enforced, or is enforceable.

(D)   The voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of *SURETY* shall be prima facie evidence of the fact and the extent of the liability of *UNDERSIGNED* to *SURETY*.

## VII
## SET-OFF

*SURETY* may, at its option without notice to *UNDERSIGNED*, reduce the amount of *UNDERSIGNED'S* liability to *SURETY* hereunder by applying to and setting off against such liability of *UNDERSIGNED* any money payable to *UNDERSIGNED* by *SURETY* or any of its affiliates. *UNDERSIGNED'S* liability to *SURETY* may arise from *UNDERSIGNED'S* obligation to exonerate, hold harmless or indemnify *SURETY* and may be liquidated or unliquidated. The money payable to *UNDERSIGNED* may be, but is not limited to, any money payable to *UNDERSIGNED* by *SURETY* or any of its affiliates, as an insurer of *UNDERSIGNED* or as an insurer or *SURETY* of another *PERSON*, or to settle a claim of *UNDERSIGNED* against *SURETY* or any of its affiliates or against a *PERSON* bonded or insured by *SURETY* or any of its affiliates.

## VIII
## SUITS

(A)   Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

(B)   Each *UNDERSIGNED* is the agent of all *UNDERSIGNED* for the purpose of service of any process in the jurisdiction in which the *UNDERSIGNED* being served resides, is domiciled, is doing business or is found.

(C)   Each *UNDERSIGNED* is the agent of all *UNDERSIGNED* for the purpose of accepting service of any notification, demand, or claim of *SURETY* hereunder.

## IX
## TRUST FUND

(A)   *PRINCIPAL* and *UNDERSIGNED* agree that with respect to each specific contract secured by *BOND(S)* executed, provided or procured by *SURETY* in *PRINCIPAL'S* behalf, all money and property representing the consideration for the performance of the contract, (including, without limitation, the proceeds of claims for adjustments, additional compensation, compensation for the delay, extra work, change orders, insurance claims and all damage claims) whether in the possession of *PRINCIPAL*, *UNDERSIGNED* or others and whether earned, unearned, paid, retained or to be paid shall be held in trust as trust funds for and shall be used solely for; (1) the performance of the contract; (2) the payment of obligation(s) to subcontractor(s), laborer(s), and supplier(s) of material(s) and service(s) incurred or to be incurred in the performance of the contract for which *SURETY* is or may be liable under *BOND(S)* and; (3) the satisfaction of *UNDERSIGNED'S* obligations to *SURETY* under this *AGREEMENT* and all other indebtedness and liabilities of *UNDERSIGNED* to *SURETY*.

(B)   *PRINCIPAL* shall, upon demand of *SURETY*, deliver the consideration for the contract to a bank designated by *SURETY* for deposit in an account in the name of *PRINCIPAL* designated as a "Special Account" or "Trust Account" and withdrawals from said "Special Account" or "Trust Account" shall be by check(s) payable to the beneficiaries and for the stated purposes of this trust, signed by a representative of *PRINCIPAL* and by a representative of *SURETY*.

(C)   If *SURETY* discharges any obligation of the *PRINCIPAL* to any trust beneficiary, *SURETY* shall be entitled to assert the rights and claim of such beneficiary to the trust fund.

(D)   This trust may be implemented in any other manner provided at law or in equity. This *AGREEMENT* and declaration constitute notice of such trust.

## X
## TAKEOVER

In the event of an occurrence of an *EVENT OF DEFAULT*, *SURETY*, without notice to *UNDERSIGNED*, shall have the right and power but not the obligation to do one or more of the following:

(a) Take possession of any part or all ... work ... contract(s) secured by BOND(S) ... plant, ... equipment, job books and records, plans, drawings, tools, supplies, materials wherever located and owned, leased or usable by *PRINCIPAL*;

(b) Assume all right, title and interest of the *PRINCIPAL* in and to all subcontracts and purchase orders, let or to be let, in connection with contract(s) secured by *BOND(S)*;

(c) Assume all right, title and interest of *UNDERSIGNED* in licenses, patents and copyrights which *SURETY* deems necessary for completion of the contracts secured by *BOND(S)*;

(d) At the expense of *UNDERSIGNED*, complete or arrange for completion or consent to the obligee's completion of part or all of the work under contract(s) secured by *BOND(S)*;

(e) Assert, pursue or prosecute, in its discretion, and at the expense of *UNDERSIGNED* in the name of *PRINCIPAL* or in the name of *SURETY*, all claims of *PRINCIPAL* against obligee(s) on *BOND(S)* or against any *PERSON*, subcontractor, supplier, government or governmental agency arising or growing out of contracts or work done thereunder secured by *BOND(S)* executed, provided or procured by *SURETY*. The authority and power to prosecute said claim(s) shall include the authority to settle said claim(s) or any part thereof on such terms as the *SURETY* believes to be in *SURETY'S* best interest;

(f) Arrange with the obligee(s) in *BOND(S)* for the delivery of the consideration for the performance of the contract(s) directly to *SURETY*, endorse checks, drafts, warrants or other instruments issued or paid by such obligee(s) and to apply the proceeds for the purpose of the trust provided in paragraph IX (A) or for any other purpose which advances the *SURETY'S* rights of exoneration, indemnification and subrogation.

## XI
## ASSIGNMENT

In order to secure *UNDERSIGNED'S* obligations to *SURETY* under this *AGREEMENT* and any other indebtedness and liabilities of the *UNDERSIGNED* to the *SURETY*, whether heretofore or hereafter incurred, the *UNDERSIGNED* hereby assign, transfer and convey to *SURETY* all right, title, interest and estate of *UNDERSIGNED* in and to all property, whether tangible or intangible, wherever situated, now owned or hereafter acquired, including but not limited to:

(a) all rights of the *UNDERSIGNED* in all contracts referred to in the *BOND(S)*, or secured by the *BOND(S)* and all money or property due or to become due *UNDERSIGNED* arising out of or in any way relating to contracts performed by *UNDERSIGNED*, whether secured by *BOND(S)* executed by *SURETY* or not, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof;

(b) all the right, title and interest of the *UNDERSIGNED* in and to all machinery, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture and fixtures;

(c) all money, cash, cash equivalents, bank accounts, deposits (checking or savings), certificates of deposit, securities, bonds and negotiable instruments;

(d) all subcontracts and purchase orders on projects in connection with which the *UNDERSIGNED* have entered contracts secured by *BOND(S)* executed by *SURETY* and all surety bond(s), undertakings or guarantees which secure said subcontracts or purchase orders;

(e) all licenses, patents, copyrights and trade secrets;

(f) all claims, causes of action, actions or demands and the proceeds therefrom which *UNDERSIGNED* may have against any subcontractor, vendor, materialman, owner, architect, engineer, accountant or others, whether arising out of contracts secured by *BOND(S)* executed by *SURETY* or not;

(g) all money, claims or causes of actions due, claimed or receivable on insurance policies including life insurance proceeds, builder risk policies, fire policies and casualty policies;

(h) all warehouse receipts, bills of lading, general intangibles and farm products;

(i) all tax refunds or claims for tax refunds;

(j) all limited partnership and general partnership interests.

This *ASSIGNMENT* shall be effective as of the date of this *AGREEMENT* but shall be enforceable only in the event of the occurrence of an *EVENT OF DEFAULT*. The *UNDERSIGNED* hereby authorize the *SURETY*, at its option, to prosecute or enforce said assigned rights in the name of the *SURETY* or in that of the *UNDERSIGNED* and to endorse and to collect in the name of the *UNDERSIGNED* or payee any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights. *SURETY'S* exercise of any of its rights as a secured creditor under this *AGREEMENT* shall not be a waiver of any of *SURETY'S* legal or equitable rights or remedies, including the *SURETY'S* rights of subrogation.

## XII
## PERFECTION OF SECURITY INTEREST

This *AGREEMENT* shall constitute a security agreement and financing statement for the benefit of the *SURETY* in accordance with the provisions of the uniform commercial code or any other statute and may be so used by the *SURETY* without in any way abrogating, restricting or limiting the rights of the *SURETY* under this *AGREEMENT* or as provided by law or in equity. *SURETY* may add such schedules to this *AGREEMENT* as it shall deem necessary. A carbon, photographic or other reproduction of this *AGREEMENT* may be filed as a financing statement.

## XIII
## POWER OF ATTORNEY

The *UNDERSIGNED* hereby irrevocably nominate, appoint, and designate the *SURETY* or any person or persons designated by the *SURETY* as their attorney-in-fact with the right, power and authority to exercise all of the rights assigned, transferred or conveyed to the *SURETY* by this *AGREEMENT*, and in the name of *UNDERSIGNED* to execute and deliver any and all additional or other assignments, instruments or documents deemed necessary or desirable by the *SURETY* to vest in the *SURETY* absolute title to any and all monies, property and rights hereby assigned, and to provide the protection and rights to the *SURETY* contemplated by the provisions of this *AGREEMENT*, including, but not limited to, the right, power and authority to sign the name of the *UNDERSIGNED* to any voucher, release, satisfaction, check, draft, Uniform Commercial Code filing or bill of sale of property.

## XIV
## CHANGES

(A) *SURETY* at its sole option, is authorized and empowered, without notice to or knowledge of the *UNDERSIGNED* to agree or refuse to agree to any change whatsoever in any *BOND*, or any contract or obligation secured by any *BOND*, including, but not limited to, any change in the time of completion of any contract and to payments or advances thereunder before the same may be due, and to consent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of any *BOND* and execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller *BOND* penalties. It is expressly understood and agreed that the *UNDERSIGNED* remain bound under the terms of this *AGREEMENT* even though any such consent by the *SURETY* may substantially increase the liability of *UNDERSIGNED*.

(B) *UNDERSIGNED* represent and warrant to *SURETY* that they are currently informed and shall remain informed and appraised of the *PRINCIPAL'S* business activities, ventures and financial affairs, including but not limited to the type, size (single job and aggregate program), location and status of projects and contracts performed by *PRINCIPAL* and secured by *BOND(S)* executed, provided or procured by *SURETY*. *SURETY* has no obligation to inform *UNDERSIGNED* of any change in any aspect of the *PRINCIPAL'S* business activities or financial affairs or in the type, size or location of projects or contracts secured by *BOND(S)* executed, provided or procured by *SURETY*.

(C) *UNDERSIGNED* waive notice of the execution, continuation, or renewal of any *BOND* and of any fact, act or information concerning or affecting the rights or liabilities of *SURETY* or *UNDERSIGNED* including, but not limited to, any acts giving rise to any loss under the *BOND(S)*.

## XV
## ADVANCES

SURETY, at its sole option, may guarantee loans or in its sole discretion for the account of the PRINCIPAL or the UNDERSIGNED money loaned to the SURETY in its sole discretion may deem advisable to so extend or loan, reserving to itself, however, the absolute right to prepay, cancel or disapprove advances under any such guarantee or to cease or withdraw advancing or lending money to the PRINCIPAL or the account of the PRINCIPAL with or without cause and with or without notice to the PRINCIPAL or UNDERSIGNED. All money extended by the SURETY, or loaned or advanced to, or for the account of, the PRINCIPAL or guaranteed by the SURETY and all related costs and expenses incurred by the SURETY, shall be loss to the SURETY for which the UNDERSIGNED shall be responsible. It is agreed and understood that money or credit advanced to the PRINCIPAL may at the discretion of SURETY be used to satisfy obligations secured by BOND(S) or may be used to satisfy other debts not covered by BOND(S) but necessary in the judgment of SURETY to advance the work. UNDERSIGNED understand and acknowledge that SURETY is under no obligation to loan money or extend credit to or for the account of the PRINCIPAL.

## XVI
## RIGHT TO INFORMATION AND RECORDS

(A)    At any time during business hours and until such time as the liability of SURETY under BOND(S) is terminated and SURETY is fully reimbursed for all of its losses, costs and expenses as a result of having executed, provided or procured BOND(S) on behalf of PRINCIPAL, SURETY shall have access to the books, records, software, data bases, computer stored information, contract documents, drawings, and accounts of UNDERSIGNED, wherever located, for the purpose of inspection, copying and reproduction.

(B)    UNDERSIGNED authorize SURETY or its designee to investigate the financial condition of UNDERSIGNED, the status of work under contracts being performed by UNDERSIGNED, the condition of the performance of such contracts, the status of payment of accounts of UNDERSIGNED and all other matters deemed appropriate by SURETY for the purpose of determining whether or not to execute BOND(S) on PRINCIPAL'S behalf or in investigating claims made against BOND(S) or in investigating SURETY'S exposure to loss generally. When requested by SURETY, banks, depositories, accountants, attorneys, obligees on BOND(S), architects, materialmen, subcontractors, supply houses, prior and subsequent sureties, joint venturer(s), and other PERSON(S) are hereby authorized by UNDERSIGNED to furnish SURETY any information requested with respect to UNDERSIGNED. SURETY shall have no liability for receipt or disclosure of any information respecting UNDERSIGNED which is obtained or utilized pursuant hereto.

## XVII
## SUBORDINATION

UNDERSIGNED waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the SURETY under this AGREEMENT, at law or in equity, have been satisfied in full.

## XVIII
## NATURE OF RIGHTS

(A)    SURETY'S rights hereunder shall be deemed to be cumulative with and in addition to all other rights of SURETY, however derived.

(B)    The UNDERSIGNED shall continue to be bound under the terms of this AGREEMENT even though the SURETY may from time to time heretofore or hereafter, with or without notice to or knowledge of UNDERSIGNED, accept or release other agreements of Indemnity, collateral or other security in connection with the execution or procurement of BOND(S), from UNDERSIGNED or others, it being expressly understood and agreed by UNDERSIGNED that any and all other rights which the SURETY may have or acquire against the UNDERSIGNED and/or other PERSONS under any other or additional agreements of Indemnity, collateral or other security shall be in addition to, and not in lieu of the rights afforded the SURETY under this AGREEMENT.

(C)    SURETY is not required to exercise or exhaust its remedies or rights against PRINCIPAL or to await receipt of any dividends from legal representatives of PRINCIPAL before asserting its rights hereunder against UNDERSIGNED.

(D)    UNDERSIGNED authorize SURETY to settle, compromise or release any claim of SURETY hereunder against any one or more of UNDERSIGNED individually, and UNDERSIGNED agree that such settlement, compromise or release shall not release or otherwise effect the liability of any of the remaining UNDERSIGNED to SURETY.

## XIX
## TERMINATION AND MODIFICATION

(A)    There shall be no waiver, modification or change of the terms of this AGREEMENT by any employee or agent of SURETY, or any broker of SURETY or PRINCIPAL, or any other PERSON without the written approval of an officer of SURETY.

(B)    This AGREEMENT may be terminated as to any UNDERSIGNED upon written notice given to SURETY by such UNDERSIGNED by registered or certified mail addressed to:

> XL Specialty Insurance Company
> 25 Independence Boulevard
> Warren, New Jersey 07059

(C)    Such termination shall not be effective until thirty (30) days after receipt of said written notice by SURETY.

(D)    Such termination shall not relieve any UNDERSIGNED from liability to SURETY arising out of or with respect to: (1) BOND(S) executed prior to such termination; (2) the renewal substitution or extension of any BOND(S) executed prior to such termination; (3) maintenance, warranty or guarantee BOND(S) executed incidental to or to replace, substitute or supplement other BOND(S) executed prior to such termination; (4) BOND(S) executed upon award of a contract to principal for which SURETY executed bid BOND(S) or BID LETTERS prior to such termination.

(E)    Such termination shall not affect in any manner the liability of any UNDERSIGNED as do not give the notice required herein.

## XX
## SEVERABILITY AND PARTIAL EXECUTION

(A)    If any provision or provisions, or portion thereof, of this AGREEMENT shall be void or unenforceable under the laws of any jurisdiction governing its construction or enforceability, this AGREEMENT shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions, or portion thereof were omitted.

(B)    In case any PERSON referred to anywhere in this AGREEMENT fails to execute the AGREEMENT, or in case the execution hereof by any of UNDERSIGNED shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity and enforceability of this AGREEMENT or the liability hereunder of any of UNDERSIGNED, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

## XXI
## MISCELLANEOUS

UNDERSIGNED are bound to SURETY under this AGREEMENT for all bonds procured by SURETY, on behalf of UNDERSIGNED, for issuance and execution by CGU Insurance Company, General Accident Insurance Company, Commercial Union Insurance Company, and any of their subsidiary, associated or affiliated companies,

## PARAGRAPH TITLES

Paragraph titles or captions contained in this *AGREEMENT* are descriptive only and shall not restrict or modify the terms of the *AGREEMENT*. In the event of any inconsistency between the paragraph titles or captions and terms of this *AGREEMENT*, the terms of this *AGREEMENT* shall control.

### XXIII
### SUPERSESSION

*UNDERSIGNED* WARRANT AND REPRESENT THAT THEY HAVE CAREFULLY READ THE ENTIRE *AGREEMENT* AND THAT THEY HAVE CONSULTED OR HAVE HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL AND SUCH OTHER EXPERTS AND ADVISORS AS THEY HAVE DEEMED NECESSARY AND THAT THEY ARE NOT RELYING ON ANY STATEMENT, REPRESENTATION, WARRANTY, COVENANT, OR *INTERPRETATION OF* ANY KIND MADE BY *SURETY* OR *BY SURETY'S* AGENTS OTHER THAN THOSE SET FORTH IN THIS *AGREEMENT* IN CONNECTION WITH THE EXECUTION, DELIVERY OR ENFORCEMENT OF THIS *AGREEMENT*.

IN WITNESS WHEREOF, this *AGREEMENT* is executed by the parties to be effective on the day and date first set forth above.

ATTEST

By: _Sham Dabadghao_
    Sham Dabadghao

Title: _Secretary_

CORPORATION

UBM Inc.

By: _Paul K_ _____ (Seal)
    Paul J. King Jr.

Title: Chairman

Address: 223 W. Jackson Suite 1200

Chicago, IL  60606-

| City | State | Zip Code |

WITNESS

_ROHIT   PATEL_

By: _Lewis Patel._

Address:  _223  W.  Jackson_

_Chicago,    IL ,   60606_

| City | State | Zip Code |

INDIVIDUAL

Paul J. King Jr.

By: _Paul K_

Address: 9112 South Constance Avenue

Chicago, IL  60606-

| City | State | Zip Code |

WITNESS

_ROHIT   PATEL_

By: _Lewis Patel._

Address:  _223  W. Jackson_

_Chicago,   IL,   60606_

| City | State | Zip Code |

INDIVIDUAL

Sandra Dixon Jiles

By: _Sandra Dixon Jiles_

Address: 175 E. Delaware #5401

Chicago, IL  60611-

| City | State | Zip Code |

INDIVIDUAL

ROHIT   PATEL

By: _Pewij Patel ._

Address:__223 W. Juckson_

_Chicago_,    _IL._    _60606_
City            State            Zip Code

Sham Dabadghao

By:_Shorni  Dabeekheo_

Address: 4848 N. Central Avenue

Chicago, IL  60630-
City            State            Zip Code

11/13/2003

CORPORATE ACKNOWLEDGMENT

State of ___Illinois_____ ss.:
County of _____
On this __18__ day of ___December___, in the year 20_03_, before me personally comes _____
_____Paul J. King Jr._____
to me known, who being by me duly sworn, deposes and says that he resides in the City of _____
that he is the ___Chairman_____ of the ___UBM Inc._____
the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

```
**********************
*  "OFFICIAL SEAL"   *
*  ANITA L. ADAMS    *
* Notary Public, State of Illinois *
* My Commission Expires 8/8/05 *
**********************
```

_____
(Signature of Notary Public)
My Commission expires_____

INDIVIDUAL ACKNOWLEDGMENT

State of ___Illinois_____ ss.:
County of _____
On this __18th__ day of ___December___, in the year 20_03_, before me personally comes _____
_____Paul J. King Jr._____
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she/they executed the same.

```
**********************
*  "OFFICIAL SEAL"   *
*  ANITA L. ADAMS    *
* Notary Public, State of Illinois *
* My Commission Expires 8/8/05 *
**********************
```

_____
(Signature of Notary Public)
My Commission expires_____

State of ___Illinois_____ ss.:
County of _____
On this __18th__ day of ___December___, in the year 20_03_, before me personally comes _____
_____Sandra Dixon Jiles_____
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she/they executed the same.

```
**********************
*  "OFFICIAL SEAL"   *
*  ANITA L. ADAMS    *
* Notary Public, State of Illinois *
* My Commission Expires 8/8/05 *
**********************
```

_____
(Signature of Notary Public)
My Commission expires_____

State of ___Illinois_____ ss.:
County of _____
On this __18th__ day of ___December___, in the year 20_03_, before me personally comes _____
_____Sham Dabadghao_____
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that he/she/they executed the same.

```
**********************
*  "OFFICIAL SEAL"   *
*  ANITA L. ADAMS    *
* Notary Public, State of Illinois *
* My Commission Expires 8/8/05 *
**********************
```

_____
(Signature of Notary Public)
My Commission expires_____

IMPORTANT: Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company member.

11/13/2003

**XL INSURANCE**
SURETY

XL Surety
20 N. Martingale Road
Suite 200
Schaumburg, IL 60173-2415
USA
Phone  800-394-3909
Fax     847-517-5245
www.xlinsurance.com

# Agreement of Indemnity
## Resolution and Certification

**WHEREAS,** the <u>Chairman, Paul J. King Jr.  and  Secretary, Sham Dabadghao</u>   of this Corporation have executed or will execute a certain Agreement of Indemnity, copy of which is attached hereto and made a part hereof, in favor of XL Specialty Insurance Company, XL Reinsurance America Inc., Greenwich Insurance Company, and their affiliated, associated and subsidiary companies, their successors and assigns protecting them in connection with their assuming suretyship as more fully described therein, said Agreement of Indemnity having been read at this meeting and fully considered and approved by the directors present; and

**WHEREAS,** the said Agreement of Indemnity has been or will be accepted by XL Specialty Insurance Company, XL Reinsurance America Inc., Greenwich Insurance Company, and their affiliated, associated and subsidiary companies, their successors and assigns upon the warranty of the said officers that this Corporation has such an interest in said suretyship as to empower it to make said Agreement of Indemnity.

**NOW, THEREFORE, BE IT RESOLVED** that the said officers of this Corporation be, and are hereby authorized to execute on behalf of this Corporation the said Indemnity, and that the acts of said officers of this Corporation who may have already executed said Agreement of Indemnity are hereby unanimously ratified and confirmed as the acts of this Corporation.

**BE IT FURTHER RESOLVED** that the aforesaid warranty that this Corporation has such an interest in said suretyship as to empower it to make said Agreement of Indemnity be, and it is hereby, ratified and confirmed as the warranty of this Corporation.

I hereby certify that I am  <u>Sham Dabadghao,  Secretary of UBM Inc.</u> that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the  <u>18</u> day  <u>December</u>, <u>2003</u>, in the office of the said Corporation, at which meeting a quorum of the Directors were present.

**IN WITNESS WHEREOF** I have hereunto set my hand and the seal of this Corporation, this <u>18</u> day  <u>December</u>, 2003

(AFFIX CORPORATE SEAL)          By:  _Sham Dabadghao_

                                                       Title:  _Sham Dabadghao, Secretary_

08CV2377 RCC
JUDGE HIBBLER
MAGISTRATE JUDGE VALDEZ

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION
### MECHANIC'S LIEN SECTION

AMERICAN BUILDING SERVICES, LLC,          )
An Illinois Limited Liability Company, AND )
THE COUNTY OF COOK                        )
FOR THE USE AND BENEFIT OF                )
AMERICAN BUILDING SERVICE, LLC,           )     No. 05 CH 13536
                                          )
                    Plaintiffs,           )     Consolidated with:
                                          )     05 CH 16394
        v.                                )     05 CH 13601
                                          )     06 CH 000575
UBM, INC., COUNTY OF COOK,                )     05 CH 21644
XL SPECIALTY INSURANCE COMPANY            )
                                          )
                    Defendants.           )

### ORDER

Defendant XL Specialty Insurance Company ("XL"), having moved the court (1) to approve XL's settlement agreement with County of Cook ("Cook County"), (2) to order payment of project funds pursuant to its terms and (3) to dismiss all consolidated cases, due notice having been given, Cook County appearing by counsel and not objecting to XL's motion, the court having considered the motion and being duly advised in the premises,

**THE COURT NOW FINDS:**

1.      On or about November 19, 2003, UBM, Inc. ("UBM") entered into a contract with Cook County, Contract No. 03-53-868 ("the Contract") for a public improvement known as the Hektoen Building Renovation Phase 2A, located at 627/637 South Wood Street in Chicago, Illinois (the "Project").

2.      XL issued a performance and payment bond for the Project, with UBM as principal, and XL as surety, Bond No. SB0087401 (the "Bond").

1



EXHIBIT
C

3.      Before completion of the Project, UBM defaulted on the Contract.

4.      Subsequent to UBM's default, Cook County demanded performance from XL under the Bond.

5.      XL performed the Contract except to the extent Cook County and XL disagreed about the scope of UBM's work under the Contract, about Cook County's entitlement to liquidated damages under the Contract, and in other respects about the particulars of XL's performance obligation under the Bond.

6.      On or about October 3, 2005, American Building Services, LLC filed a complaint against UBM, Cook County and XL in the Circuit Court of Cook County, Illinois, entitled "*American Building Services, LLC, An Illinois Limited Liability Company, and the County of Cook for the use and benefit of American Building Services, LLC, plaintiff, v. UBM, Inc., County of Cook, XL Specialty Insurance Company, defendants*, No. 05 CH 13536, into which have been consolidated the various subcontractor suits against UBM, Cook County and /or XL of Johnson Controls, Inc., No. 06 CH 575, Cable Communications, Inc., No. 05 CH 16394, Edwards Engineering, Inc., counterclaim in 05 CH16394, Focus Environmental Contractors, LLC, as intervener in No. 05 CH 16394, Warren F. Thomas Plumbing Company, 05 CH 21644, and Rupp Industries, Inc., No. 05 CH 3601 (collectively the "Lawsuit").

7.      XL has settled and paid all payment bond claims reflected in the Lawsuit of Johnson Controls, Inc., Cable Communications, Inc., Edwards Engineering, Inc., and American Building Services, LLC and all lien claims of Focus Environmental Contractors, LLC, Warren F. Thomas Plumbing Company, and Rupp Industries, Inc. at a total cost to XL of $649,174.82.

2

8.    By right of assignment and subrogation, XL has made demand on Cook County for the balance of Project funds and Cook County has asserted a right of setoff for damages as a result of UBM's breach.

9.    On or about August 17, 2007, XL and Cook County entered into a settlement agreement for the resolution of all issues between them arising from the Bond for the Project; this settlement agreement was amended on or about December 19, 2007 ("Settlement Agreement").

10.    The Settlement Agreement contemplates court approval and ordering of the disposition of the balance of the Project funds. Paragraph 18 of the Settlement Agreement provides:

> "The Parties agree that upon execution by the Parties this Agreement will be presented to the court presiding over the Lawsuit for approval of the form of this Agreement and to dispose of the balance of the Project funds as provided in this Agreement.    This Agreement will be effective upon the court's approval ("Effective Date")."

Paragraph 5 of the Settlement Agreement provides:

> "The balance of the Project funds is in the amount of \$173,767.22. This balance is net of recognized credits as provided in paragraph 1 of this Agreement (i.e. \$646,658.27 – \$472,891.05 = \$173,767.22). Promptly upon the Effective Date of this Agreement, the parties will seek a court order directing that this balance be paid to the Clerk of the Circuit Court of Cook County, to be disbursed as the Court orders. Cook County agrees that one half of the balance of the Project funds may be paid to XL immediately after deposit with the Clerk, and that the other one half may be paid to XL upon completion of all work specified in paragraph 2 of this Agreement."

**BASED ON THE FOREGOING, THE COURT HEREBY ORDERS:**

1.    The form of the Settlement Agreement is approved.  Any and all liens against the Project funds are released in accordance with the Settlement Agreement.

3

2.    Cook County shall as soon as possible pay to the Clerk of the Circuit Court of Cook County the balance of Project funds in the amount of $173,767.22.

3.    This case and all cases consolidated herewith are hereby dismissed, with prejudice as to Cook County, XL and Edwards Engineering, Inc., each party to bear its own costs.

4.    The court retains jurisdiction to enforce the Settlement Agreement and to disburse the Project funds being held by the Clerk pursuant to the terms of the Settlement Agreement.

SO ORDERED this 9th day of January, 2008.

CIRCUIT COURT JUDGE

```
ENTERED
JUDGE LEWIS M. NIXON-1840

JAN 9 - 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```

4

**UBM, INC.**
**ACCOUNTING AS OF MARCH 3, 2008**

**Claim No. 5002637**
**Bond No. SB0087401**

| Date | Payee | Loss | Expenses |
|------|-------|------|----------|
| 02/28/07 | Cashin Spinnelli & Ferretti | | $1,526.00 |
| 04/17/07 | Leo & Weber, P.C. | | $1,764.00 |
| 05/11/07 | Leo & Weber, P.C. | | $2,297.85 |
| 06/08/07 | Cashin Spinnelli & Ferretti | | $91.00 |
| 06/07/07 | Leo & Weber, P.C. | | $1,762.30 |
| 05/31/07 | Cashin Spinnelli & Ferretti | | $585.00 |
| 07/09/07 | Leo & Weber, P.C. | | $2,700.80 |
| 08/10/07 | Cashin Spinnelli & Ferretti | | $390.00 |
| 08/07/07 | Leo & Weber, P.C. | | $871.00 |
| 07/31/07 | Cashin Spinnelli & Ferretti | | $299.00 |
| 09/10/07 | Leo & Weber, P.C. | | $722.50 |
| 10/01/07 | Cashin Spinnelli & Ferretti | | $932.00 |
| 10/05/07 | Leo & Weber, P.C. | | $918.00 |
| 10/24/07 | Cashin Spinnelli & Ferretti | | $208.00 |
| 11/06/07 | Leo & Weber, P.C. | | $4,279.70 |
| 11/27/07 | Cashin Spinnelli & Ferretti | | $2,513.60 |
| 12/07/07 | Leo & Weber, P.C. | | $3,052.50 |
| 01/09/08 | Cashin Spinnelli & Ferretti | | $572.00 |
| 01/04/08 | Leo & Weber, P.C. | | $1,022.66 |
| 02/07/08 | Cashin Spinnelli & Ferretti | | $182.00 |
| 02/06/08 | Leo & Weber, P.C. | | $1,889.74 |
| | **TOTAL LOSSES/EXPENSES** | **$769,019.52** | **$202,063.55** |
| | *GRAND TOTAL* | *$971,083.07* | |

08CV2377 RCC
JUDGE HIBBLER
MAGISTRATE JUDGE VALDEZ



UBM, INC.
## ACCOUNTING AS OF MARCH 3, 2008

**Claim No. 5002637**
**Bond No. SB0087401**

| Date | Payee | Loss | Expenses |
|------|-------|------|----------|
| 03/24/05 | Illinois Secretary of State | | $20.00 |
| 07/11/05 | XL Specialty Insurance (Travel Expense) | | $52.13 |
| 11/09/05 | Leo & Weber, P.C. | | $410.00 |
| 12/07/05 | Leo & Weber, P.C. | | $4,132.49 |
| 01/06/06 | Leo & Weber, P.C. | | $2,681.18 |
| 02/15/06 | Edwards Engineering, Inc. | $122,554.15 | |
| 02/13/06 | Leo & Weber, P.C. | | $4,587.93 |
| 01/31/06 | Cashin Spinnelli & Ferretti | | $4,946.49 |
| 03/16/06 | Cable Communications, Inc. | $94,996.05 | |
| 03/10/06 | Leo & Weber, P.C. | | $3,664.82 |
| 02/28/06 | Cashin Spinnelli & Ferretti | | $7,377.10 |
| 04/12/06 | Leo & Weber, P.C. | | $7,262.32 |
| 03/31/06 | Cashin Spinnelli & Ferretti | | $11,120.28 |
| 05/10/06 | Leo & Weber, P.C. | | $2,014.20 |
| 06/01/06 | Midwest Construction Group, Inc. | $15,177.50 | |
| 06/09/06 | Rupp Industries, Inc. | $3,376.64 | |
| 06/12/06 | American Building Services, LLC | $7,056.93 | |
| 06/13/06 | Cashin Spinnelli | | $8,018.34 |
| 06/13/06 | Johnson Controls, Inc. | $55,971.00 | |
| 06/13/06 | Leo & Weber, P.C. | | $5,119.49 |
| 06/27/06 | Edwards Engineering, Inc. | $143,589.25 | |
| 05/31/06 | Cashin Spinnelli & Ferretti | | $5,212.97 |
| 07/19/06 | Leo & Weber, P.C. | | $6,922.44 |
| 06/30/06 | Cashin Spinnelli & Ferretti | | $13,101.69 |
| 08/03/06 | Leo & Weber, P.C. | | $1,580.89 |
| 07/31/06 | Cashin Spinnelli & Ferretti | | $7,176.65 |
| 09/06/06 | Edwards Engineering, Inc. | $139,078.20 | |
| 09/08/06 | Leo & Weber, P.C. | | $10,294.40 |
| 08/31/06 | Cashin Spinnelli & Ferretti | | $10,502.29 |
| 10/13/06 | Leo & Weber, P.C. | | $5,301.60 |
| 10/19/06 | Warren Thomas Plumbing | $6,372.00 | |
| 10/30/06 | Cashin Spinnelli & Ferretti | | $11,584.88 |
| 11/07/06 | Leo & Weber, P.C. | | $6,319.40 |
| 10/31/06 | Cashin Spinnelli & Ferretti | | $16,160.00 |
| 12/06/06 | Leo & Weber, P.C. | | $1,208.09 |
| 12/20/06 | Edwards Engineering, Inc. | $56,074.00 | |
| 12/27/06 | Johnson Controls, Inc. | $35,812.00 | |
| 12/27/06 | Cable Communications, Inc. | $55,000.00 | |
| 01/02/07 | Focus Environental Contractors, LLC | $13,191.80 | |
| 01/02/07 | Warren F. Thomas Plumbing Company | $10,770.00 | |
| 01/12/07 | Cashin Spinnelli & Ferretti | | $4,382.04 |
| 01/15/07 | Leo & Weber, P.C. | | $2,878.95 |
| 01/12/07 | Leo & Weber, P.C. | | $585.39 |
| 12/31/06 | Cashin Spinnelli & Ferretti | | $3,676.50 |
| 02/27/07 | Edwards Engineering, Inc. | $10,000.00 | |
| 02/19/07 | Leo & Weber, P.C. | | $1,416.85 |
| 03/08/07 | Cashin Spinnelli & Ferretti | | $928.00 |
| 03/15/07 | Leo & Weber, P.C. | | $2,844.10 |